Mr. A.L. Lockhart, Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, Arkansas 71611
Dear Mr. Lockhart:
This is in response to your request for an opinion on several questions concerning Act 545 of 1991. That act is now codified at A.C.A. § 16-93-1004 (Cum Supp. 1991), in a subchapter entitled "Community Service Work." You note that Act 545 allows the court to suspend imposition of the sentences of "eligible offenders," and allows the court to place the offender in a county detention facility to participate in a community work project.
Your questions refer primarily to Section 2 of the act, now A.C.A. § 16-93-1004 (f), which provides that the "State" shall be responsible for the cost of medical treatment of eligible offenders sentenced under the felony provisions of the subchapter. Subsection (g) of the same statute makes the "state" responsible for any liability incurred as a result of implementation and execution of the subchapter, involving felony offenders who may be injured either while working on a community work project, or while being transported to or from such a project.
The emergency clause of Act 545, (Section 6), which is uncodified, explains the purpose of the act as follows:
 It is hereby found by the General Assembly that work release programs are not being utilized due to county and city officials' concerns over legal liability and medical costs for inmates who may be placed in these programs. It is further found by the General Assembly of the State of Arkansas that work release programs where persons convicted of felonies and/or misdemeanors are put to work for the community's benefit are in the best interest of the State and of the inmates so diverted from the Arkansas Department of Correction and that provisions should be made for their medical treatment and for any legal liability costs that arise. . . .
You note that under the language of the act, imposition of the sentence of an eligible offender may be suspended, and you thus conclude that the defendant is not sentenced to the Arkansas Department of Correction ("ADC"). Your first question regarding these facts is as follows:
 Is the intent of Act 545 to vest the financial and legal responsibility in the Arkansas Department of Correction, absent the Department having received a signed commitment order?
The answer to this question is unclear under the act, and would appear to require legislative clarification.
The overriding intent of the act, as can be seen from the emergency clause thereof, is that cities and counties not incur any liability as to the medical costs or legal liability for these offenders. Toward this end, the act provides that the "State" shall be liable for these expenses. It does not specify, however, which state agency is to make these payments, or from which appropriation the funds are to derived. We have found no appropriation act which specifically speaks to these expenses.
It may be contended, based upon other language of the act, that the intent of the act was to impose this liability upon the Department. Section 16-93-1004 (h) provides that the "state" shall reimburse the counties for housing inmates sentenced pursuant to the felony provisions of this subchapter at a rate to be determined by the the State Board of Correction." Additionally, § 16-93-1004 (f)(2) provides that the Department of Correction can transfer inmates in need of medical treatment to a facility it deems appropriate for the inmate's treatment. These provisions, which give the Board of Correction and the Department some measure of authority over these offenders, may be read to impute some responsibility in connection with the authority. It is my opinion, however, that these provisions alone cannot operate to dispel the ambiguity as to which part of the "state" will bear the burden of the medical and legal liability expenses. In light of this ambiguity, it is my opinion that the Department would not be unreasonable in taking the position that it is not the responsible party under the act. Under existing law, because the act is unclear as to the responsible party, it may be necessary for such claims to be undertaken by the State Claims Commission. Again, the issue needs legislative clarification.
Your second question is as follows:
 The Department has previously been legally barred from assuming medical or legal liability for any offender on whom a commitment order had not been signed. Is the Department now allowed to expend state funds on individuals not under commitment to it?
As stated above, it is my opinion that the act is unclear in this regard, and requires legislative clarification. It is my opinion, however, that the Department may reasonably construe this statute as not imposing any financial responsibility directly upon it. This issue, and other issues concerning the Department's legal responsibilities under this act, should be determined by the Department with the advice of its appointed counsel in this office.
Your third question is as follows:
 The Act also states, `. . . that the Department of Correction may transfer any inmate committed to jail pursuant to this subchapter.' Can the Department now assume custody of offenders on suspended sentence without benefit of a due process hearing or court order?
The provision referred to in this question is § 16-93-1004 (f), which provides as follows:
 The state shall be responsible for the cost of medical treatment of an eligible offender sentenced pursuant to the felony provisions of this subchapter:
 * * *
 (2) That is the result of illness or injuries sustained by persons committed to the county jail and who are assigned to a community work project; provided, however, that the Department of Correction may transfer any inmate committed to jail pursuant to this subchapter to a medical or treatment facility it deems appropriate for said treatment. [Emphasis added.]
It is my opinion that this provision allows the Department, in its discretion, to assume "custody" for the sole purpose of transporting the inmate to a treatment facility. It is my opinion that this limited exercise of dominion over the inmate, in all probability, does not require a due process hearing or a court order.
Your fourth question is as follows:
 The county is under no apparent obligation to notify the Department that an offender is incarcerated under the provisions of Act 545. Thus, the offender is assigned to a work program without benefit of a physical or psychological examination, and without access to the due process of meeting the Classification Committee. Is the Department liable for conditions of confinement of offenders about whom it has no knowledge, and over whom it has no control? Is the Department liable for the actions of offenders whom it has not classified as eligible for work release?
Act 545 does not govern liability for "conditions of confinement." It only governs liability for medical expenses and liability arising from injuries while on a work project or in route to or from a work project. The question of whether the Department will be liable for "conditions of confinement" as regards these offenders will be determined on a case-by-case basis with particular facts at hand. It is my opinion, however, as a general matter, that the Department will not incur legal liability for the "conditions of confinement" of these offenders, as long as the ADC is not the committing institution. There may be a stronger argument for liability if the "conditions of confinement" claim involves medical treatment, as the ADC has some authority over the medical treatment of these offenders. A.C.A. § 16-93-1004 (f)(2). Because this authority is not mandatory, however, it is my opinion that as a general matter the ADC would not be liable for these claims.
As for liability for the actions of these offenders, again, Act 545 does not govern this liability. As long as these offenders are not committed to the ADC and the Department exercises no control over them, it is unlikely, in my opinion, that it would be held liable for their actions.
Your fifth question is as follows:
 There is no indication in Act 545 that the sheriffs have any voice in selecting which offenders they believe they can safely confine and work at the community level. If an inmate in the county level proves unsuitable, what recourse or process is available to the sheriff?
This question, in my opinion, is governed by A.C.A. § 16-93-1004
(d) which provides as follows:
 In the event that the offender's conduct while participating in a community work project is unsatisfactory, the court may upon petition filed by the prosecuting attorney schedule a hearing to determine if the offender should be allowed to continue to participate in the community work project. This hearing shall follow the same format and accord the offender the same safeguards as the revocation procedure as outlined in § 5-4-309. . . . If the court determined that the offender's conduct has not been satisfactory, the court shall remand the offender to the Arkansas Department of Correction. . . .
The sheriff's remedy, when faced with an inmate he believes unsuitable for the work program, is to ask the prosecuting attorney to petition the court according to the procedure set out above.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh